## TOM BEDFORD v. THE STATE.

### *No. 1482.   Decided December 2nd, 1896.*

**1.   Murder—Self-Defense to Protect Defendant's Sister From Abduction— Charge.**

On a trial for murder, where the defense was, that defendant killed deceased to protect his (defendant's) sister from abduction for purposes of prostitution by deceased; and the evidence was, that defendant dressed himself as a woman, and deceased, with his friends, approached, and upon one of the party remarking, "There is Tom, now," deceased raised his gun, and defendant immediately fired upon and killed him. Held: That a charge of court was misleading upon the issue of self-defense, as presented by these facts, which instructed the jury that, "the right of self-defense or in defense of another, does not arise where there is an opportunity to restrain the assailant by process of law; in other words, one who believes his sister or other female relative is about to be unlawfully attacked, if the circumstances are such that he can, he must resort to the law for their protection before he would be justified in law on the ground of defending another from unlawful attack."

**2.   Same.**

On the facts stated in paragraph No. 1, defendant was entitled to have the jury instructed, in effect: "If you believe, from the evidence, that the defendant was informed that Jim Walker intended to take his sister from her house, and that Bedford went to his mother's house to prevent the accomplishment of Walker's purpose, and, while defendant was there for that purpose, Walker approached the house, armed with a gun, and that Walker, without any previous demonstration on Bedford's part, raised his gun in a shooting position towards the defendant; and defendant thought from such actions of Walker, that deceased was about to shoot defendant, then, under these circumstances, the defendant had a right to stand his ground and shoot Walker in his own self-defense; and, under these circumstances, defendant was not bound to resort to any other means than the killing of his assailant."

APPEAL from the District Court of Colorado. Tried below before Hon. THOMAS H. SPOONER.

Appeal from a conviction for murder in the second degree; penalty, five years' imprisonment in the penitentiary.

The opinion contains a very concise, but sufficiently full statement of the salient features of the case.

[No brief for either party has come to the hands of the Reporter.]

*Mann Trice*, Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted of murder in the second degree, and his punishment assessed at five years in the penitentiary; hence this appeal. The court charged the jury on murder in the first and second degrees, and gave a charge on manslaughter and self-defense. There is evidence in the case tending to show that the deceased was killed at or near the residence of the mother of the defendant; that the defendant had three unmarried sisters, who lived with his mother; deceased lived some twenty miles from there, in Wharton County; that deceased came to the house of Lucy Parker, the mother of the defendant, on the night in question, for the purpose of taking away with him (evidently for the purpose of prostitution) the youngest sister of the defendant; that defendant heard that he was coming to the house that night for that purpose, late in the evening, before the homicide, which occurred at night; and that defendant disguised himself in female apparel, and took his gun, and with two other companions was waiting near the house, as insisted upon by the State, for the purpose of killing deceased, but, as insisted upon by him, in order to expostulate with the deceased, and prevent his carrying away of his sister. On this point the defendant testified as follows: "After I got to my mother's house, Jim Walker, Henry Morris, and another I did not know, came up the path, from the direction of the pecan tree and well. Henry Morris is Clem Morris' son. Walker was about ten or twelve steps from me. I was about fifteen or twenty steps from the house. They were talking. One said (I took it to be Morris), 'There is Tom now.' Jim raised his gun. I raised mine, and fired. My purpose was to protect my sister. I put on the dress so that I could get close enough to speak to him, so I could get him to desist. I shot him after he raised his gun. It was not my intention to shoot him when I went out there. I shot in self-defense." The charge of the court on self-defense is as follows: "Now, if you believe from the evidence that the deceased had threatened to abduct the defendant's sister from her home for the purpose of prostitution, and you further believe that the defendant had been informed or told of said threat, if any, and the defendant proceeded to the house where his sister was living, for the purpose of protecting his sister from said Walker, and that, at the time Walker was killed, he (Walker) was upon the premises where the sister of the defendant was living, and was then and there armed with weapons, and you further believe that said Walker then and there, by some act done, showed an immediate intention to carry out such threat, if any, into execution, and from all the facts known to the defendant he had reason to believe, and did believe, was entering upon or approaching the place for the purpose of abducting his sister, and acting under such apprehension, if any, as

the same reasonably appeared to him, defendant, at the time he fired and killed the deceased to protect his sister from abduction by the deceased, then you will acquit the defendant. But, in connection with the foregoing charge, you are instructed that the right of defense of self or in defense of another does not arise when there is an opportunity to restrain the assailant, by process of law; in other words, one who believes his sister or other female relative about to be unlawfully attacked, if the circumstances are such that he can, he must resort to the law for their protection, before he would be justified in law, on the ground of defending another from an unlawful attack." The self-defense charged was to protect the sister of the defendant from abduction. The facts show beyond question that the sister at the time was at church, some mile and a half from the place of the killing; and the acts of the defendant could not have been regarded by the jury as reasonably necessary in order to protect his sister, at the time, from abduction by the deceased; and the charge was clearly misleading upon the issue of self-defense as presented in the defendant's testimony. Appellant asked a charge covering the phase of self-defense, upon which he relied, which is as follows: "If you believe from the evidence that the defendant was informed that Jim Walker intended to take his sister from her house, and that Bedford went to his mother's house to prevent the accomplishment of Walker's purpose, and, while defendant was there for that purpose, Walker approached the house, armed with a gun, and that Walker, without any previous demonstration on Bedford's part, raised his gun in a shooting position towards the defendant, and defendant thought from such actions of Walker that deceased was about to shoot defendant, then, under these circumstances, the defendant had a right to stand his ground, and shoot Walker in his own self-defense; and, under these circumstances, defendant was not bound to resort to any other means than the killing of his assailant." The court, in his explanation, giving his reasons for the refusal of said charge, says that he refused it "because the evidence did not warrant such a charge, as the defendant admits that he disguised himself by dressing in a woman's dress, and secreted himself in the roadside, and, when the deceased's attention was directed to his presence, he simply raised his gun, which he was carrying in his hand; no evidence that he raised it in a shooting position at or towards defendant, but simply raised it up." It seems to us that this explanation, if pertinent at all, would clearly have furnished a reason for the refusal of the court to give the charge he did give on self-defense in the protection of defendant's sister. However, we have already seen that that charge was not pertinent to the evidence in the case. The defendant's testimony shows that he was on his mother's premises, where he had a right to be; that he was there to prevent deceased taking his sister, who would return home as soon as church was over; and that deceased raised his gun; and that he shot him in self-defense, to protect himself. It is true, as the learned judge observes in his explanation, that the testimony does not show that he pointed the

gun directly at the defendant, or that he took aim at him. But, according to the defendant's testimony, it was such a demonstration as caused him to apprehend danger to himself. Whether this was real or not, or whether or not his testimony was credible, was not for the judge to decide, but was a matter for the consideration of the jury; and no matter how incredible it might appear to others, or how weak it might appear in connection with the other facts and circumstances of the case, it was not within the province of the judge to deprive the jury of passing upon this phase of the case under a proper charge. In our opinion, the charge asked, or something similar to it, covering this phase of the case, should have been presented to the jury. It is not deemed necessary to discuss the other errors assigned in this case, but, for the error of the court in refusing to give the requested charge, the judgment is reversed, and the cause remanded.

*Reversed and Remanded.*

HURT, Presiding Judge, absent.